UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN THOMAS RAINEY,<br><br>　　　　　　　Petitioner,<br><br>　v.<br><br>TIM WENGLER,<br><br>　　　　　　　Respondent. | Case No. 1:12-cv-00418-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner John Thomas Rainey's Petition for Writ of Habeas Corpus, challenging his Ada County conviction of sexual battery of a minor child 16 or 17 years of age. (Dkt. 3.) On October 17, 2014, the Court granted in part Respondent's motion for partial summary dismissal and dismissed Claim 1 and Claim 3(c) of the Petition as non-cognizable. The Court denied, without prejudice, Respondent's request to dismiss Claims 3(a), 3(b), 3(d), and 4 as procedural defaulted, because the Idaho Court of Appeals—in addition to finding the claims procedurally barred—also considered and denied the claims on the merits. The merits of these claims, as well as the merits of Claim 2, are now fully briefed. (Dkt. 23, 24.)

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal

**MEMORANDUM DECISION AND ORDER - 1**

Rule of Civil Procedure 73. (Dkt. 16.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief on Petitioner's remaining claims.

## BACKGROUND

The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on October 22, 2013. (Dkt. 17.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Petitioner was initially charged in the Fourth Judicial District in Ada County, Idaho, with forcible rape in violation of Idaho Code § 18-6101. (State's Lodging A-1 at 10; B-4 at 2.) The Idaho Court of Appeals described the crime as follows:

> On June 22, 2007, while staying at her mother's home, sixteen-year-old J.G. awoke to find a man in her bed. The man told her to lie down and be quiet. He then proceeded to forcibly engage in various sexual acts with her. J.G. believed that her mother's boyfriend, [Petitioner], was her attacker. After the attack, J.G. heard [Petitioner] leave the bathroom and go to the couch. J.G. ran to her mother's bedroom and reported that [Petitioner] had intercourse with her. Her mother . . . did not believe J.G.'s account. When confronted by [the victim's mother], [Petitioner] denied the allegations. Gloria then called the police, but allowed [Petitioner] to flee the home and instructed J.G. on what to tell the police. Upon arrival, the police investigator was told that [Petitioner] had not been in the home at the time of the attack.
>
> Throughout the investigation, [Petitioner] and [J.G.'s mother] told the police that [Petitioner] had been at his mother's home on the night J.G. was raped. They provided the police with a number of names of potential suspects for the attack. Following up on these false leads, the police interviewed and obtained DNA samples from multiple

**MEMORANDUM DECISION AND ORDER - 2**

suspects. However, months later the police learned that the
DNA taken from J.G. matched the sample provided by
[Petitioner]. When confronted, [Petitioner] denied raping J.G.
and claimed that his semen was found in J.G. as a result of his
sleepwalking. J.G. was re-interviewed and admitted that she
had withheld information from the police. She explained her
mother instructed her on what to say, even though J.G. always
suspected that [Petitioner] was her attacker. J.G. told the
police that she did what she was told so that she would not get
in trouble.

(State's Lodging B-4 at 1-2.)

Pursuant to a plea agreement in which the prosecution agreed to an amended

charge—the lesser offense of sexual battery of a minor child who is 16 or 17 years of age,

*see* Idaho Code § 18-1508A(1)(a)—Petitioner entered an *Alford* plea.[1] (*Id.*) Petitioner

claimed that he could not remember the incident in which he raped his girlfriend's

daughter because he was sleepwalking while he committed the crime. (State's Lodging

B-4 at 2.) Petitioner's explanation for lying to the police as to his whereabouts on the

night of the incident was that he was trying to evade an outstanding warrant for another

crime, not that he was evading arrest for rape. (State's Lodging A-3 at 36.)

At the sentencing hearing, the trial court spoke at length as to the reasons why

Petitioner's claim of sleepwalking was not credible:

I want to make a couple of comments about the events of that
night and this claim of sleepwalking. And I say it is a claim of
sleepwalking and it's fairly convenient for you to make, but
there are several anomalies that really, I think, point out that

---

[1]    *See also North Carolina v. Alford*, 400 U.S. 25, 35 (1970) (holding that it is constitutionally
permissible for a court to accept and sentence an individual upon "a plea by which a defendant does not
expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes
of the case to treat him as if he were guilty.").

**MEMORANDUM DECISION AND ORDER - 3**

you were very aware of the events that night and it was not as you now claim a sleepwalking event.

For instance, why in the world would you make up a lie about where you were if all you were trying to do is evade a warrant because all you'd have to do is leave. . . .

You make up a lie about where you were not because you were evading a warrant, is what you say in all of your statements. But think about it, if all you were trying to do is not get in too deep and just evade a warrant, all you have to do is leave. The lie was to create an alibi to avoid responsibility. Now, if you truly were sleepwalking, you wouldn't need to have to make up a lie. You could have explained that to the police, that you don't remember doing anything. But you didn't do that. You left. How did the alibi help you with the warrant? It doesn't. The whole story makes no sense.

Furthermore, . . . it is very clear from the victim's— what she says happened that you were coherent, there was no indication other than this self report of sleepwalking that you were sleepwalking. This wasn't just a random conversation that may happen during sleepwalking. It was a very appropriate for what was happening conversation. If you are just simply sleepwalking, why in the world do you tell her over and over again be quiet, everything's going to be okay.

And then to demonstrate how purposeful your acts were, what the victim observed to me were very significant. You stopped the sexual assault, which had gone on for some time, where you anally penetrated her, you vaginally penetrated her against her will in a very violent and brutal manner. You stopped, according to her, when you noticed she was crying. Now, if you are sleepwalking you don't have any idea of any other thing going on around you. You don't act appropriately. That is the bottom line.

There's no evidence here to suggest that this brutal rape—and even though it's been pled down to sexual abuse, make no bones about it, this was a rape. You vaginally penetrated her with your penis against her will. There was no consent. This isn't a stat rape. This is a rape.

**MEMORANDUM DECISION AND ORDER - 4**

There is no evidence here other than your own excuse that you were sleepwalking. We have nothing from any doctors. We have nothing to suggest that you were unaware of what it was that you were doing.

And what did you do when you finished, when you stopped because she was crying, you go back out into the living room. It is interesting to me that you don't go into the master bedroom with your girlfriend. You go out to the living room and lie down. You don't immediately say to your girlfriend, I didn't do it. We need to call the police. Oh, no. You leave. You create an alibi. So to me there's no evidence for this business.

. . . .

Now, what's also interesting to me when the police confronted you, when the detective there confronted you with DNA evidence, you immediately went into, it must be on the sheets, because you were unaware that they had found it inside her. You were not aware of that. So you again made an excuse. That suggests to me again culpability, that you do know what you did.

Now, maybe it makes you feel better and maybe it helps you with your family for you to say I didn't know. But I don't believe that. I believe you know exactly what you did. You ran because you knew you had committed a crime and that's why.

(*Id*. at 35-39.)

Another factor in the court's sentencing decision was that Petitioner actively

attempted to "mislead the police and [was] pointing fingers at a whole lot of other people

for this crime[, and] all the while you knew you were there that night. You knew beyond

a doubt." (*Id*. at 41.) The court also considered other factors, such as Petitioner's

childhood sexual abuse and a psychological report setting forth several provisional

**MEMORANDUM DECISION AND ORDER - 5**

diagnoses of personality disorders. (*Id*. at 41-45.) In the end, the court imposed a unified

sentence of life imprisonment with twenty-five years fixed. (*Id*. at 48.)

Petitioner appealed his sentence. The Idaho Court of Appeals affirmed, and the

Idaho Supreme Court denied review. (State's Lodging B-4; B-6.)

The trial court denied Petitioner's initial state postconviction petition. Petitioner

appealed, but later requested to dismiss or withdraw his appeal voluntarily. The Idaho

Supreme Court granted Petitioner's motion to dismiss. (State's Lodging D-1; D-2.)

Petitioner then filed a successive petition for state postconviction relief, which the

state district court denied. Following the petition's somewhat complex procedural

journey (*see* Dkt. 22 at 4), the Idaho Court of Appeals affirmed the denial of the petition.[2]

Petitioner filed the instant federal Petition in September 2012. Because the Court

previously dismissed Claims 1 and 3(c) of the Petition as noncognizable, only the

following claims remain for adjudication on the merits:

|   |   |
|---|---|
| Claim 2: | Petitioner received an excessive sentence in violation of the Eighth Amendment. |
| Claim 3(a): | Petitioner was denied due process when the trial court and jail would not allow him a "separate prognosis" regarding Petitioner's alleged somnambulism. |
| Claim 3(b): | Petitioner was denied due process when the trial court exhibited racial bias in sentencing Petitioner, allegedly departing from the presentence investigation report. |

---

[2]      As this Court has previously determined, the Idaho Court of Appeals "affirmed the state district court's dismissal of the petition on the merits as not setting forth any grounds for substantive relief and, alternatively, as procedurally barred under § 19-4908 because Petitioner had not shown sufficient reason why the claims were not adequately presented in his initial postconviction petition." (Dkt. 22 at 5.)

**MEMORANDUM DECISION AND ORDER - 6**

Claim 3(d):        Petitioner's guilty plea was coerced, in violation of due
                   process, because Petitioner believed that pleading
                   guilty would allow him to avoid a harsh sentence, and
                   yet he was sentenced to 25 years to life. This claim
                   implicates the Due Process Clause and, because
                   Petitioner alleges that his trial counsel promised that
                   he would be placed on a retained jurisdiction program,
                   the Sixth Amendment.

Claim 4:           Petitioner was denied his Fifth Amendment right to be
                   free from compelled self-incrimination when his trial
                   attorney did not advise him that he had a right to
                   remain silent during a psychological evaluation used
                   for sentencing purposes. Although Petitioner appears
                   to assert this as a Fifth Amendment claim, his
                   reference to his trial attorney invokes the Sixth
                   Amendment as well.

(*See* Dkt. 3.) All of these claims were raised to, and rejected by, the Idaho state courts.

(*See* State's Lodging E-1 at 1-12; G-1; G-4 at 4.)

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims adjudicated on the merits in

a state court judgment when the federal court determines that the petitioner "is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances

where the state court's adjudication of the petitioner's claim

(1)        resulted in a decision that was contrary to, or
           involved an unreasonable application of, clearly
           established Federal law, as determined by the
           Supreme Court of the United States; or

(2)        resulted in a decision that was based on an
           unreasonable determination of the facts in light

**MEMORANDUM DECISION AND ORDER - 7**

> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned

decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501

U.S. 797, 804 (1991). However, a state court need not "give reasons before its decision

can be deemed to have been 'adjudicated on the merits'" under § 2254(d). *Harrington v.*

*Richter*, 562 U.S. 86, 100 (2011).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test. Under the first test, a state

court's decision is "contrary to" clearly established federal law "if the state court applies

a rule different from the governing law set forth in [the Supreme Court's] cases, or if it

decides a case differently than [the Supreme Court] [has] done on a set of materially

indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1) the petitioner must show that the state court—although identifying "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*,

529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which

a state court unreasonably applies [Supreme Court] precedent; it does not require state

courts to extend that precedent or license federal courts to treat the failure to do so as

error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

**MEMORANDUM DECISION AND ORDER - 8**

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Richter*, 562 U.S. at 102. The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER - 9**

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations resulting from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This strict deferential standard of § 2254(d) applies to habeas claims except in the following narrow circumstances: (1) where the state appellate court did not decide a properly-asserted federal claim; (2) where the state court's factual findings are unreasonable under § 2254(d)(2); or (3) where an adequate excuse for the procedural

**MEMORANDUM DECISION AND ORDER - 10**

default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In those circumstances, the federal district court reviews the claim de novo. In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Because the Idaho Supreme Court made a merits decision with respect to Claims 2, 3(a), 3(b), 3(d), and 4, this Court applies the standard set forth in § 2254(d).

**DISCUSSION**

**1.      Claim 2: Eighth Amendment Claim that Petitioner Was Given an Excessive Sentence**

In Claim 2, Petitioner argues that his sentence of twenty-five years to life, for sexual battery of a minor, violates the Eighth Amendment. He advances two theories to support this claim. First, Petitioner argues that his sentence constitutes cruel and unusual punishment because the offense of conviction "carries a maximum of 15 years." (Dkt. 3 at 7.) Second, Petitioner also appears to argue that his sentence is disproportionate to the severity of his crime.

### A.      *Clearly-Established Law*

The Eighth Amendment, which protects against cruel and unusual punishment, prohibits a court from sentencing a defendant to a term of imprisonment greater than the statutory maximum. *See United States v. McDougherty*, 920 F.2d 569, 576 (9th Cir. 1990). ("Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds."). Further, the Eighth

**MEMORANDUM DECISION AND ORDER - 11**

Amendment includes the principle that a sentence must not be disproportionate to the offense committed. *Graham v. Florida*, 560 U.S. 48, 59 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997-98 (Kennedy, J., concurring in part and concurring in the judgment). The proportionality principle is very narrow and "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001. An analysis of the gross proportionality standard must include consideration of "all of the circumstances of the case." *Graham*, 560 U.S. at 59.

Applying the gross proportionality principle, the United States Supreme Court has upheld fixed life sentences for possession of a large quantity of cocaine and for obtaining money by false pretenses, as well as a sentence of twenty-five years to life for "the theft of a few golf clubs." *Id*. at 60. Further, the Court has determined that a habeas petitioner was not entitled to relief under the Eighth Amendment even though he was sentenced, under a recidivist sentencing scheme, to two consecutive terms of twenty-five years to life for stealing approximately $150 in videotapes. *Lockyer v. Andrade*, 538 U.S. 63, 76-77 (2003).

### B.     The Idaho Court of Appeals' Rejection of Claim 2 Was Not Unreasonable

Petitioner's first argument, that he was sentenced to a term of imprisonment greater than the statutory maximum punishment, is simply wrong. The crime of sexual battery of a minor 16 or 17 years old is governed by Idaho Code § 18-1508A(1)(a). That statute clearly provides that the statutory maximum punishment is life imprisonment. Idaho Code § 18-1508A(4) ("Any person guilty of a violation of the provisions of

**MEMORANDUM DECISION AND ORDER - 12**

subsection (1)(a) of this section shall be imprisoned in the state prison for a period not to exceed life."). The state court reasonably rejected Petitioner's claim in this regard.

With respect to the assertion that Petitioner's sentence is grossly disproportionate to the crime of conviction, the Idaho Court of Appeals' decision affirming the sentence was eminently reasonable. The prosecution recited the following factual basis for Petitioner's guilty plea:

> [J.G.] reported that in the early morning hours of June 22nd, 2007, while [J.G.] was at home asleep in her bed at her mother's house in Ada County that a person had come into her bedroom and had manual to genital, manual to anal, and genital to genital contact with her. . . .

> Upon further investigation of this case a vaginal sexual assault kit was obtained immediately from her and eventually the defendant's DNA was obtained by consent . . . .

> . . .

> Once law enforcement could identify who this was, they went back to [J.G.] to discuss the situation with her. At that point she made further disclosures and stated she recognized that it was the defendant who had come into her bedroom that night that had had this sexual battery with her.

(State's Lodging A-2 at 20-21.) Petitioner agreed that, if he were to go to trial, the prosecution would have presented this evidence.

Petitioner forcibly raped his girlfriend's teenage daughter, lied about it, and actively misled police by identifying several innocent people as potential culprits. As the trial court recognized, the fact that Petitioner pleaded guilty to a lesser offense pursuant to a plea agreement in no way diminishes the violent and heinous nature of his actions. If the Constitution is not offended by a sentence of twenty-five years to life for stealing golf

**MEMORANDUM DECISION AND ORDER - 13**

clubs or videotapes, *see Graham*, 560 U.S. at 60; *Lockyer*, 538 U.S. at 76-77, it is most certainly not offended by the same sentence for the horrors that Petitioner inflicted on his young and vulnerable victim. Simply put, the Idaho Court of Appeals was correct in concluding that Petitioner has no legitimate claim that his sentence violates the Eighth Amendment.

**2.      Claim 3(a): Due Process Claim that Petitioner Was Not Provided an Expert on Somnambulism**

In Claim 3(a), Petitioner asserts that he should have been granted access to an expert on somnambulism and that the trial court's failure to grant such access before Petitioner pleaded guilty violated the Due Process Clause.

### A.      *Clearly-Established Law*

The Supreme Court has held that, if a defendant "demonstrates to the trial judge that his *sanity* at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent *psychiatrist* who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) (emphasis added). However, there is no clearly-established law that a defendant who claims he was sleepwalking during the crime must be given access to an expert on somnambulism.

Some lower courts have applied *Ake* to certain experts other than psychiatrists. *See Babick v. Berghuis*, 620 F.3d 571, 579 (6th Cir. 2010) ("The circuit courts have not reached consensus on the question."). But the Supreme Court has not extended *Ake* to claims of somnambulism—or, for that matter, any other non-psychiatric expert. In fact, in

**MEMORANDUM DECISION AND ORDER - 14**

*Caldwell v. Mississippi*, the Supreme Court expressly declined to consider whether "there was constitutional infirmity in the trial court's refusal to appoint various experts and investigators to assist" the defendant. 472 U.S. 320, 323 n.1 (1985). *See also Johnson v. Oklahoma*, 484 U.S. 878, 880 (1987) (Marshall, J., concurring) (noting that *Caldwell* "reserved the equally important questions whether and when an indigent defendant is entitled to nonpsychiatric expert assistance").

### B.   The Idaho Court of Appeals' Rejection of Claim 3(a) Was Not Unreasonable

Given that there is no clearly-established Supreme Court case law standing for the proposition that a defendant who claims he was sleepwalking during the crime has a due process right to be examined by an expert in somnambulism, the Idaho Court of Appeals' decision was reasonable, *see* 28 U.S.C. § 2254(d), and Petitioner is not entitled to habeas relief on Claim 3(a).

## 3.   Claim 3(b): Due Process Claim that the Trial Court Exhibited Racial Bias in Sentencing Petitioner

Claim 3(b) alleges that in sentencing Petitioner to twenty-five years to life, the sentencing judge exhibited racial bias.

### A.   Clearly-Established Law

The Due Process Clause entitles a criminal defendant to "a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of [the] particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal quotation marks and citation omitted). The probability of a judge's actual bias is "too high to be constitutional tolerable" only in narrow circumstances—such as where the

**MEMORANDUM DECISION AND ORDER - 15**

judge "has a pecuniary interest in the outcome" of the case or where the judge "has been the target of personal abuse or criticism" from the defendant. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). This Court must presume that the trial judge acted with honesty and integrity, and it is Petitioner's burden to convince the Court otherwise. *See id*.

### B.     The Idaho Court of Appeals' Rejection of Claim 3(b) Was Not Unreasonable

Petitioner has not come forward with any evidence supporting his conclusory allegation that the sentencing judge was biased against him on account of Petitioner's race or otherwise. Whether the sentencing judge departed from the recommendations in the presentence investigation report is irrelevant. The question is whether the Idaho Court of Appeals unreasonably denied Petitioner's claim that the trial judge exhibited racial bias in sentencing Petitioner. The answer is clearly no—Petitioner has not met his burden of showing actual bias. *See Withrow*, 421 U.S. at 47. Therefore, Petitioner is not entitled to relief on Claim 3(b).

### 4.     Claim 3(d): Due Process Claim that Petitioner's Guilty Plea Was Involuntary and Sixth Amendment Claim that Trial Counsel Coerced the Guilty Plea

Claim 3(d) claims that Petitioner's guilty plea was not knowing, intelligent, and voluntary because, in entering his plea, Petitioner relied on his attorney's alleged "promise" that Petitioner would avoid a harsh prison sentence and would, instead, be placed on a retained jurisdiction program or probation. (Dkt. 3 at 8.)

### A.     Clearly-Established Law

The Due Process Clause of the Fourteenth Amendment requires that a guilty plea be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Where a

**MEMORANDUM DECISION AND ORDER - 16**

defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). A defendant who pleads guilty on the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-
> guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to
> conclude that a particular act or omission of counsel was
> unreasonable. A fair assessment of attorney performance
> requires that every effort be made to eliminate the distorting
> effects of hindsight, to reconstruct the circumstances of

**MEMORANDUM DECISION AND ORDER - 17**

> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in
> different ways. Some errors will have had a pervasive effect
> on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has

**MEMORANDUM DECISION AND ORDER - 18**

met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 792 (2011).

To show prejudice based on deficient performance of counsel in a case where, as here, the petitioner pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

When evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d)(1), the Court's review of that claim is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

## B.     The Idaho Court of Appeals' Rejection of Claim 3(d) Was Not Unreasonable

A review of the record establishes that the Idaho Court of Appeals' rejection of Petitioner's claim of an invalid guilty plea based on counsel's alleged "promise" was not contrary to, or an unreasonable application of, the clearly-established law set forth in *Boykin*, *Tollett*, and *Hill*. In the Guilty Plea Advisory Form, which Petitioner executed in conjunction with his plea agreement, Petitioner stated that he understood the maximum possible penalty for his conviction was a term of life imprisonment. (State's Lodging A-1 at 62.) When asked whether anyone had promised that Petitioner would receive "any special sentence, reward, favorable treatment, or leniency," Petitioner circled "No." (*Id.* at 68.) Petitioner also answered affirmatively when asked if he understood "that the only

person who can promise what sentence [he would] actually receive is the Judge." (*Id*. at 69.)

During the change-of-plea hearing, Petitioner again acknowledged that he could receive a sentence of life imprisonment and recognized that the judge was free to depart from any sentencing recommendation:

| [The court]: | I just want to make sure that all of us understand the agreement. What that means, Mr. Rainey, is the State is free to come in and ask for a life without possibility of parole. Do you understand that? |
|---|---|
| [Petitioner]: | Yes. |
| [The court]: | And they're not required to stand silent. They can make any argument that they wish. Do you understand that? |
| [Petitioner]: | Yes. |
| [The court]: | There's no promises to you as to what would happen in the event—when the Court sentences you. Do you understand that? |
| [Petitioner]: | Yes. |
| . . . . | |
| [The court]: | Now, what do you understand is the maximum prison sentence that you can receive for this crime? |
| [Petitioner]: | Up to life in prison. |
| [The court]: | And do you understand that I can impose that without the possibility of parole? Do you understand that? |
| [Petitioner]: | Yes. |
| [The court]: | Have any promises or suggestions been made to you as to what I might do? |

**MEMORANDUM DECISION AND ORDER - 20**

| [Petitioner]: | No. |
| [The court]: | Do you understand that I'm not bound by any recommendation made by either counsel? Do you understand that? |
| [Petitioner]: | Yes. |
| [The court]: | It is fully my decision within my discretion to decide what your sentence is. Do you understand that? |
| [Petitioner]: | Yes. |

(State's Lodging A-2 at 15-16.)

It is clear from this extensive colloquy that Petitioner was fully aware that he could receive the maximum sentence of life in prison. He explicitly denied that anyone had promised him any particular sentence or otherwise coerced him into entering the *Alford* plea. Therefore, the court of appeals' decision was reasonable, and Petitioner is not entitled to relief on Claim 3(d). *See* 28 U.S.C. §2254(d).

**5.      Claim 4: Fifth Amendment Claim that Petitioner Was Deprived of His Right to Be Free from Compelled Self-Incrimination, and Sixth Amendment Claim that Counsel Failed to Advise Petitioner of that Right**

In Claim 4, Petitioner asserts that he was denied his right, under the Fifth Amendment, to remain silent when he participated in a psychological examination to be used at sentence. Petitioner also argues that he received ineffective assistance of counsel, under the Sixth Amendment, when trial counsel failed to advise Petitioner of his Fifth Amendment right.

**MEMORANDUM DECISION AND ORDER - 21**

### A.   Clearly-Established Law

The Fifth Amendment to the United States Constitution provides, in relevant part,

that "[n]o person . . . shall be compelled in any criminal case to be a witness against

himself." Every criminal defendant has a right not to testify at trial. The general rule is

that the Fifth Amendment privilege is not self-executing, but must be asserted by a

person who faces self-incrimination. *Minnesota v. Murphy*, 465 U.S. 420, 429-30, 434

(1984).

There are two exceptions to the general rule. One is where a person is in custody;

in that case, the state must warn the prisoner of his right against self-incrimination, as

explained in *Miranda v. Arizona*, 384 U.S. 436 (1966). The second exception is where

there is a penalty attached to remaining silent. *Murphy*, 545 U.S. at 434. "In each of the

so-called 'penalty' cases, the state not only compelled an individual to appear and testify,

but also sought to induce him to forgo the Fifth Amendment privilege by threatening to

impose economic or other sanctions 'capable of forcing the self-incrimination which the

Amendment forbids.'" *Id.* (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977)).

Although the Idaho Supreme Court has held that a defendant has a Fifth

Amendment right to refuse to participate in a psychological or psychosexual evaluation

for purposes of sentencing, *see Estrada v. Idaho*, 149 P.3d 833, 838-39 (Idaho 2006), the

United States Supreme Court has not.

The *Strickland* standards set forth above apply with equal force to Petitioner's

claim that his attorney was ineffective in failing to advise him of his right to remain silent

during the psychological evaluation.

**MEMORANDUM DECISION AND ORDER - 22**

### B.     The Idaho Court of Appeals' Rejection of Claim 4 Was Not Unreasonable

Petitioner's claims that he was denied his Fifth Amendment right against compelled self-incrimination with respect to the psychological evaluation, and that his trial attorney rendered ineffective assistance in failing to advise him that Petitioner could refuse to participate in the psychological evaluation. However, Petitioner's assertions are belied by the record.

In his Guilty Plea Advisory Form, Petitioner answered "yes" to the following questions regarding the psychological evaluation: (1) "As a result of your plea in this case, is there a mandatory domestic violence, substance abuse, or psychosexual evaluation?"; (2) "Have you discussed with your attorney the fact the Court will order a pre-sentence investigation, psychosexual evaluation, anger evaluation and/or domestic violence evaluation *and that anything you say during any of those examinations may be used against you in sentencing*?"; and (3) "Has your attorney explained the fact that *you have a constitutional right to remain silent during any of those examinations* but that you may give up that right and voluntary participate in those examinations?" (emphasis added). Petitioner's own statements establish that counsel did advise Petitioner of his rights with respect to the psychological evaluation.

Further, even if counsel had failed to advise Petitioner of his right to refuse to participate in the psychological evaluation, Petitioner cannot show prejudice. At the change-of-plea hearing, the trial judge asked Petitioner directly whether Petitioner understood that he had a right to remain silent during the psychological evaluation, but that he could give up that right and participate in the evaluation:

**MEMORANDUM DECISION AND ORDER - 23**

| [The court]: | Now, you understand that I'm going to be ordering both a presentence report and a psychological evaluation and that anything you say during either of those can be used against you at sentencing? |
|---|---|
| [Petitioner]: | Yes, I understand. |
| [The court]: | Do you understand you have a constitutional right to remain silent during both examinations, but you can give up that right and participate voluntary [sic]? |
| [Petitioner]: | I do. |

(State's Lodging A-2 at 15.)

Petitioner was fully aware of his right to remain silent during the psychological evaluation. The Idaho Court of Appeals' decision was reasonable, and Petitioner is not entitled to relief on Claim 4.

## CONCLUSION

The Idaho Court of Appeals' decisions rejecting Claims 2, 3(a), 3(b), 3(d), and 4 were not contrary to, or an unreasonable application of, clearly-established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. §2254(d). Therefore, Petitioner's habeas Petition will be denied.

## ORDER

**IT IS ORDERED:**

1.  Claims 2, 3(a), 3(b), 3(d), and 4 of the Petition (Dkt. 3) are DENIED on the merits. Because all of Petitioner's other claims have already been dismissed, this entire action is DISMISSED with prejudice.

**MEMORANDUM DECISION AND ORDER - 24**

2.      The Court does not find its resolution of this habeas matter to be reasonably

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a

timely notice of appeal with the Clerk of Court. Petitioner may seek a

certificate of appealability from the Ninth Circuit by filing a request in that

court.



DATED: **January 19, 2016**

_____
Honorable Ronald E. Bush
United States Magistrate Judge